UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREW CHIEN,<br>    *Plaintiff*,<br><br>    v.<br><br>TIMOTHY P. JENSEN, *et al.*,<br>    *Defendants*. | No. 3:24-cv-01717 (KAD) |

**ORDER GRANTING [20] MOTION TO DISMISS**

Kari A. Dooley, U.S.D.J.

This action arises out of a longstanding (some might say unrelenting) dispute between Plaintiff Andrew Chien ("Plaintiff" or "Chien") and non-party Richard Freer. Defendants Timothy P. Jensen and William J. O'Sullivan, both attorneys, previously represented Freer in litigation between Plaintiff and Freer. Plaintiff commenced this action *pro se* in the Superior Court for the State of Connecticut on October 7, 2024. Defendants subsequently removed the action to this Court.[1] Although the Complaint is largely inscrutable, Plaintiff appears to allege that Defendants were involved in a Racketeering Influenced and Corrupt Organization (RICO) scheme, engaged in unlicensed consumer debt collection against Plaintiff for purposes of unjust enrichment in violation of Conn. Gen. Stat. § 36a-800(3)(iii)-(iv), defamed Plaintiff, and committed gross negligence causing him injury. Pending before the Court is Defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).

For the reasons discussed below, the motion to dismiss is GRANTED, with prejudice.

---

[1] Plaintiff objected to removal. *See* Docs. #11, 14. This Court overruled those objections because it was apparent from the Notice of Removal and Complaint that the Plaintiff was asserting violations of federal law, at least in part. *See* Doc. #16.

## STANDARD OF REVIEW

The standards that govern a motion to dismiss under Rules 12(b)(1) and 12(b)(6) are well established. Under Rule 12(b)(1), a complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain federal subject matter jurisdiction. *See Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016).

Similarly, it is well established that to survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *Charles v. Orange Cnty.*, 925 F.3d 73, 81 (2d Cir. 2019) (same). In addition, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).

Finally, courts must construe a *pro se* complaint with "special solicitude," such that it is interpreted to raise the "strongest claims that [the complaint] suggests"—although this does not excuse *pro se* complaints from stating a plausible claim for relief. *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).[2]

## ALLEGATIONS

---

[2] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

Plaintiff's Complaint is a nigh-Delphic collection of statements that track back to a prior (and apparently ongoing) dispute between Plaintiff and Freer (Freer Dispute).[3] In the Freer Dispute, Defendants Jensen and O'Sullivan—both attorneys—represented Freer with respect to one of the many cases brought in the Superior Court for the State of Connecticut.[4] It is exceedingly difficult to construct a meaningful narrative from the Plaintiff's scattered and disorienting allegations. The allegations span over a decade; recount disjointed and seemingly unrelated events; reference multiple prior litigations (which do not appear to have involved Defendants); are rife with legal conclusions of unknown applicability; and are otherwise largely inscrutable. However, having closely examined the Complaint for substantive meaning and the specter of narrative consistency, the Court is able to discern the following allegations, which are accepted as true at this stage.

Plaintiff alleges that Defendants, during the Underlying Litigation (part of the broader Freer Dispute), "engaged in unlicensed consumer debt collection for just [sic] enrichment, in violation of C.G.S. § 36a-800(3)(iii) & (iv)" and that Defendants "aid[ed Freer] . . . in acts constituting a [RICO] scheme *while acting as Freer's attorney*" in the Freer Dispute. Doc. #1-1 at 6 (¶ 1) (emphasis added). Plaintiff claims that the Freer Dispute is "based on alleged judicial misconduct spanning 12 years in NNH-CV-12-4053717-S *Freer v. Chien* . . . which stemmed from the fraudulent default judgment in [related] Virginia case CL.12-485." *Id.* at 7 (¶ 4).

---

[3] The Court takes judicial notice of the dozens of prior actions related to this case and the broader Freer Dispute. *See generally* Doc. #20-1 at 1-18.

[4] Defendants represented Freer in litigation brought by Plaintiff against Freer and Superior Court Judges Jongbloed and Goodrow, which case was docketed as No. NNH-CV24-5060022-S, in the judicial district of New Haven and is referred to herein as the "Underlying Litigation." By Memorandum of Decision dated March 25, 2025, the Underlying Litigation was dismissed under the prior pending action doctrine and Plaintiff was enjoined from filing further actions against Freer. *Chien v. Freer*, No. NNH-CV24-5060022-S, 2025 WL 972581, Doc. #127.50. That order is presently on appeal. *Id.* at Doc. #150.00.

In Plaintiff's telling, the Freer Dispute "arose during the Chapter 11 bankruptcy proceedings of Commonwealth Biotechnology Inc." *Id.* at 9 (¶ 12). Plaintiff alleges that during those proceedings, his "civil rights were violated under the 'color of law'" and that Freer and his lawyers "persuaded Judge Richard Burke to assist in the unlawful detention of Chien . . . from 2013 to 2016" in violation of C.G.S. § 53a-92. *Id.* at 7 (¶ 4). Plaintiff claims that his unlawful detention lasted for "approximately 38 months" and that, although the firm representing Freer, LeClairRyan, apparently dissolved, Freer "continued his debt collection efforts"—despite Plaintiff's "countersuits." *Id.* at 7 (¶¶ 4-55). Plaintiff explains that these events allegedly made it "essential" for him "to sue both Freer and the judges involved." *Id.* at 7 (¶ 6). This allegation is a reference to the Underlying Litigation in which Defendants represented Freer.

What is clear, the confusing nature of the allegations notwithstanding, is that Plaintiff's RICO claim against Defendants rests on and derives from their representation of Freer in the Underlying Litigation. *See id.* at 7-8 (¶¶ 4-7).[5] Those same judicial proceedings serve as the context for Plaintiff's claim that Defendants fraudulently misused the courts and judicial processes for purposes of debt collection, allegedly in violation of C.G.S. § 36a-800(3)(iii) and 15 U.S.C. § 1692(e)(13)—and, although unclear, perhaps allegedly in violation of the FDCPA and the Consumer Financial Protection Act as well. *See, e.g.*, *id.* at 22-24 (¶¶ 40, 42). Plaintiff also claims that Jensen "defamed Chien to question Chien's claim of the false imprisonment." *Id.* at 23 ((¶ 40(e)). And the Complaint also states that Defendant O'Sullivan "committed gross negligence to supervise Jensen's fraudulent actions." *Id.* at 23 (¶ 41).

---

[5] This is despite Plaintiff's inexplicable statements to what would seem to be the contrary. For example, Plaintiff claims that "[a]lthough Jensen *did not* directly engage in RICO-related activities every day, he supported Freer's continued misconduct and conspired with him to harm Chien daily." Doc. #1 at 19 (¶ 34) (emphasis added). He then proceeds, however, to state that "Jensen has *now* become the latest member of Freer's RICO scheme." *Id.* (emphasis added).

4

Plaintiff seeks compensatory and punitive damages. *See id.* at 24 (¶ 43).

## DISCUSSION

As a preliminary matter, the Court observes that, due to litigation misconduct, Plaintiff has been, since 2017, prohibited from filing further actions in this Court without leave of the Court. *See Chien v. Clark*, No. 16cv1881, Doc. #40 at 6.[6] Defendants thus ask this Court to enforce the filing ban and dismiss the action. However, as Plaintiff commenced this action in state court, he did not run afoul of the filing ban. Nor, on the present record, can the Court conclude that Plaintiff acted in a bad faith attempt to circumvent his filing restriction, or otherwise improperly manipulate the Court's jurisdiction. Because Plaintiff did not initiate his action in this Court in contravention of the filing injunction, and because removal was indeed proper, *see* Doc. #16, the Court will not dismiss the Complaint on grounds of Plaintiff's failure to obtain leave as urged by Defendants.

Defendants also seek dismissal of this case for both lack of subject matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. Doc. #20 at 4-5. Because a Rule 12(b)(1) motion concerns the Court's subject matter jurisdiction—a threshold issue—it must be addressed first. *See U.S. Bank Nat'l Assoc. v. 1078 Whillmore LLC*, 740 F. Supp. 3d 157, 166 (E.D.N.Y. 2024) (quoting *U.S. ex rel. Kreindler*

---

[6] The prior case giving rise to the federal filing ban also arose out of Plaintiff's dispute with Freer. In both dismissing the case and imposing the filing ban, the Court observed: "Chien has filed numerous claims, countersuits and appeals based on the events alleged in the within complaint. In several of those cases, the courts imposed sanctions on Chien, including dismissal of his claims and/or a ban on filing new actions. *See Chien v. Freer*, 3:13cv540 (E.D. Va. August 14, 2014); *Chien v. Freer*, CL 14000491-00, Cir. Ct. Prince George Cty., Va. (September 8, 2014); *Freer v. Chien*, NNH-cv-12-4053717 (Conn. Super. July 15, 2015); *Chien v. Skystar Bio Pharm Co.*, 3:09cv149 (D. Conn. August 12, 2009); *In re Commonwealth Biotechnologies, Inc.*, U.S. Bankruptcy Court (E.D. Va. November 1, 2012)." Although Defendants in this action do not appear to have been previously named in Plaintiff's onslaught of litigation, Freer's law firm LeClairRyan, was a named defendant and the claims brought here are certainly in the same vein. Notably, Defendants also seek dismissal on the grounds of *res judicata* and collateral estoppel insofar as the claims brought in this action are nothing more than a continuation of the litigation that Chien has pursued and lost on multiple occasions. The Court does not need to reach this issue having decided to dismiss the claims with prejudice under the litigation privilege. But even a brief review of Chien's exhaustive litigation history reveals the likely merit of this argument.

*& Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993)); 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (4th ed.) ("[T]he cases are legion stating that the district court should consider [a] Rule 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined by the judge.").

Furthermore, when the Rule 12(b)(1) motion is facial—meaning based solely on the sufficiency of the allegations in the complaint or the complaint and exhibits attached to it—the plaintiff has no evidentiary burden. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016). In such cases, a district court's task is to determine if, after accepting as true all material factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff, the alleged facts affirmatively and plausibly suggest that the court has subject matter jurisdiction. *Ibid.* Accordingly, the Court first considers Defendants' Rule 12(b)(1) argument before proceeding to their 12(b)(6) arguments.

### *Subject matter jurisdiction*

Defendants first argue that the claims brought against them are barred by absolute immunity or the litigation privilege, which, they assert, deprives this Court of subject matter jurisdiction. *See* Doc. #20 at 7-10. Defendants rely on *Dorfman v. Smith*, 342 Conn. 582, 594 (2022), in which the Connecticut Supreme Court announced that the "applicability of absolute immunity implicates the court's subject matter jurisdiction." Doc. #20 at 7 (quoting *Dorfman*, 342 Conn. at 594). True, undoubtedly, as to the subject matter jurisdiction of the state courts.

But Connecticut's "common law does not divest federal courts of jurisdiction." *Wang v. Delphin Rittmon*, 664 F. Supp. 3d 205, 216 (D. Conn. 2023). Indeed, federal courts derive subject matter jurisdiction from their federal statutory or constitutional power to adjudicate

6

cases. *See United States v. Cotton*, 535 U.S. 625, 630 (2002). Moreover, the Supreme Court has spoken clearly on the interaction between a defense of absolute immunity and a federal court's subject matter jurisdiction: "There is no authority whatever for the proposition that absolute- and qualified-immunity defenses pertain to the court's jurisdiction." *Nevada v. Hicks*, 533 U.S. 353, 373 (2001); *see also Sakon v. Johnson*, 2024 WL 1175370, at *3 (D. Conn. 2024) (reiterating that "a defense of absolute . . . immunity has nothing to do with a federal court's jurisdiction"). The appropriate framework for consideration of this affirmative defense, then, is Rule 12(b)(6)—and not Rule 12(b)(1). *See Wang*, 665 F. Supp. 3d at 218; *Sakon*, 2024 WL 1175370, at *3.

As noted above, the Court has already held that removal was proper based upon federal question jurisdiction and the defense of absolute immunity does not alter that conclusion.

***Litigation privilege***

In Connecticut, the rule of absolute immunity, also referred to as the litigation privilege, is a well-established common law doctrine that protects participants in judicial and quasi-judicial proceedings from tort liability for conduct and communications made during those proceedings, so long as the statements and conduct are relevant to the issues involved. *See Cruz v. Signify N. Am. Corp.*, 2023 WL 3499579 at *5 (D. Conn. 2023 (explaining that the privilege works to protect "the statements or actions that any individual makes, in the context of a judicial proceeding, from giving rise to most types of tort claims" (citing *MacDermid, Inc. v. Leonetti*, 310 Conn. 616, 627 (2013)). The Connecticut Supreme Court has emphasized that the privilege promotes the integrity of the judicial process by encouraging free and candid communication without fear of subsequent liability. *See, e.g.*, *Simms v. Seaman*, 308 Conn. 523, 544–45 (2013), (reaffirming that privilege applies to statements made in the course of judicial proceedings that

are relevant to the subject matter of the litigation, regardless of whether the statement was made with malice).

The Connecticut Supreme Court has also, however, clearly established the limits of this protection. In *Ammar I. v. Department of Children & Families*, the Court recently explained that it has "refused to apply absolute immunity to causes of action alleging the improper use of the judicial system, including claims for abuse of process, vexatious litigation, malicious prosecution, and retaliatory litigation in violation of General Statutes § 31-290a because these claims seek to hold an individual liable for . . . the improper use of the judicial process for an illegitimate purpose, namely, to inflict injury on another individual in the form of unfounded legal actions." 2025 WL 907776, at *6 (Conn. 2025); *see also Simms*, 308 Conn. at 545-48.

Here, Defendants seek dismissal of the Complaint on the grounds that the claims are clearly barred by the litigation privilege. *See* Doc. #20 at 7-10. The Court agrees.

Counts One, Four, and Five (as against Jensen), and Count One (as against O'Sullivan) do not assert, in any fashion, an abuse of the litigation process as described in *Ammar. See Ammar I.*, 2025 WL 907776, at *6. Count One appears to address Jensen's alleged violation of "his limited job scope by acting as a debt collector." Doc #1-1 at 22 (¶ 40(a)). Count Four alleges that Jensen "[a]ided Freer to engage scheme of RICO." *Id.* at 23 (¶ 40(d)). Count Five alleges that Jensen "defamed Chien to question Chien's claim of the false imprisonment in VA for about 38 months, implying that it was legal to treat Chien as the debt-prison." *Id.* (¶ 40(e)). And Count One (as against O'Sullivan) alleges that O'Sullivan "committed gross negligence to supervise Jensen's fraudulent actions with the five counts." *Id.* (¶ 41). All of these claims derive from Defendants' legal representation of Freer in the Underlying Litigation. And none, to the extent they are even comprehensible, suggest any acts by Defendants undertaken to inflict injury on

8

Chien "in the form of unfounded legal actions." *Ammar I.*, 2025 WL 907776, at *6. In fact, the Complaint itself acknowledges that Defendants' alleged misconduct was undertaken while Defendants served as Freer's attorneys in the Underlying Litigation Doc. #1-1 at 6 (¶ 1). Accordingly, Counts One, Four and Five are DISMISSED with prejudice.

That leaves Counts Two and Three (as against Jensen). Count Two alleges a "[v]iolation of C.G.S. 36a-800(3)(iii) and 15 U.S.C. 1692(e)(13) through the abuse of the litigation process for consumer debt collection." *Id.* at 23 (¶ 40(b)). Count Three alleges that Jensen engaged in a "[c]onspiracy with Freer to violate C.G.S. 36a-800(3)(iii) and 15 U.S.C. 1692(e)(13) by aiding Freer in committing the subject error through the misuse of the court process for debt collection in case NNH-CV12-4053717-S." *Id.* (¶ 40(c)). These claims, on their face, appear to allege abuse of the litigation process—meaning, of course, that the litigation privilege would not serve as an able shield against them.

But affixing the label of "abuse of the litigation process" to a claim is not sufficient to defeat the assertion of the litigation privilege. Purely legal conclusions such as these are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Indeed, as the Connecticut Supreme Court has made clear, "it is not enough for the plaintiff to allege that the misconduct at issue constituted an improper use of the judicial system, but rather, the cause of action itself must challenge the *purpose* of the underlying litigation or litigation conduct." *Dorfman*, 342 Conn. at 596-97. Here, Plaintiff does not sufficiently allege (or allege at all) any facts to support a claim that Jensen "used any litigation or legal process to accomplish a purpose for which it was not designed." *Cruz*, 2023 WL 3499579, at *6. Furthermore, it is not at all clear in the Complaint that either Jensen or O'Sullivan *initiated* the alleged legal processes for an improper *purpose*.

9

*See also Dorfman*, 342 Conn. at 596-97. Indeed, neither was even a party to the prior litigation. Both were merely counsel to Freer. And, as he acknowledges, the Underlying Litigation was *commenced by Plaintiff*. Doc. #1-1 at 7 (¶ 4).

Finally, to the extent Plaintiff seeks to gather all his claims under the umbrella of "fraud," the claims still fail. Plaintiff concludes his Complaint with a jury trial demand, and explains that, "[g]iven the gravity of the fraud, the involvement of a jury is crucial to ensure that justice is serviced." *Id.* at 24 (¶ 42). But Connecticut courts frequently apply the litigation privilege to claims that attempt to characterize "allegedly fraudulent conduct as an abuse of the legal system." *Tyler v. Tatoian*, 164 Conn. App. 82, 93 (2016); *see also Boston Prop. Exch. Transfer Co. v. Merrill Lynch*, 2013 WL 2383606, at *7 (Conn. Sup. Ct. 2013) ("[U]nder Connecticut law, the court would be required to apply the privilege to strike the plaintiff's fraud, spoliation and conspiracy claims."). Thus, even if Plaintiff is alleging, which is not clear, that Defendants engaged in "fraud" while representing Freer in prior litigation, such an allegation does not save his claims because they would not adequately allege that the legal processes *themselves* were *initiated* for an improper *purpose*. *Dorfman*, 342 Conn. at 596; *Simms*, 308 Conn. at 546-47 (explaining why a claim of fraud "does not require consideration of whether the underlying purpose of the litigation was improper" and is therefore "entitled to absolute immunity").

For all the above reasons, the Court concludes that all Plaintiff's claims are barred by the litigation privilege. The Plaintiff is reminded that the filing injunction against him in this Court remains in place.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. #20) is GRANTED with prejudice. Plaintiff's pending motions (Docs. #17, 29, 30, 34, 37, 40, 43, and 44) are DENIED as moot. The Clerk of Court is directed to close this case.

It is so ordered.

Dated at Bridgeport, Connecticut this 16th day of April 2025.

/s/
Kari A. Dooley
United States District Judge